Case 4:23-cv-02025   Document 24   Filed on 03/12/25 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
March 12, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BALVINA RENTERIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-02025 |
| | § | |
| GRIEG STAR AS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court is the defendant's, Grieg Star AS ("Grieg Star"), motion for summary judgment (Dkt. No. 18). The plaintiff, Balvina Renteria, has filed a response to Grieg Star's motion (Dkt. No. 19), and Grieg Star has filed a reply (Dkt. No. 21).  After reviewing the motion, the pleadings, the record, and the applicable law, the Court determines that Grieg Star's motion should be **GRANTED** .

**II.   FACTUAL BACKGROUND**

On August 17, 2021, Renteria was injured while working in Hold 6 of the *M/V Star Juventas,* a vessel owned and operated by Grieg Star. At that time, Renteria was working as a longshoreman and engaged in cargo operations at the Port of Houston. She was injured when she fell ten feet through plastic sheeting used in Hold 6 where rolls of kraft linerboard had been stowed for transport. As a result she suffered spinal injuries. were discovered later at the hospital. Renteria had worked the previous two days unloading cargo from Hold 6 of the same vessel and had

performed the same work as she had at the time of her injury: rolling up the plastic sheeting used in Hold 6. Renteria had no contact with the crew during her work in Hold 6.

### III.   CONTENTIONS OF THE PARTIES

Grieg Star argues that the undisputed facts of the case show that at the time of Renteria's injury none of the duties owed by a vessel to a longshoreman, such as Renteria, were violated. Grieg Star further argues that Renteria's claim for negligence per se is inapplicable as a matter of law. Finally, because there is no basis for negligence it is entitled to summary judgment on Renteria's gross negligence claim.

Renteria responds that there are disputed questions of material fact on all claims. She argues there are factual disputes regarding the turnover duty, the active control duty, and the duty to intervene. Furthermore, she argues that the regulation that she cites to as a basis for negligence per se claim applies to Grieg Star and creates a factual question. Finally, Renteria argues that her claim for gross negligence should be decided by a jury.

### IV.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where the pleadings, the discovery and disclosure

materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Id.* (internal citations omitted). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses."

*Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, (1986)).

V.   **ANALYSIS & DISCUSSION**

   a. *Negligence*

The Longshoreman and Harbor Workers' Compensation Act states that "[i]n the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel...." 33 U.S.C. § 905(b). While "the primary responsibility for the safety of the longshoremen rests upon the stevedore[,]" there are three narrow duties, known as the *Scindia* duties, that are owed by vessel owners to longshoremen. *See Scindia Steam Navigation Co., Ltd. v. De Los Santos,* 451 U.S. 156, 166–67 (1981). Those duties are: "(1) a turnover duty, (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel, and (3) a duty to intervene." *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 391 (5th Cir. 2008). "A vessel need not supervise or inspect ongoing cargo operations for the benefit of longshoremen." *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 102 (1994). Nor does a vessel owner need to "exercise scrutiny over a cargo loading operation to discover defects that may become hidden when the stow is complete." *Id.* at 103. Therefore, "[t]o be a legal cause of a plaintiff's injury, breach of a *Scindia* duty must be a substantial factor in the injury." *Moore v. M/V Angela,* 353 F.3d 376, 383 (5th Cir. 2003) (quotation omitted).

In this case, however, only the turnover and active control duties are at issue because a plaintiff is precluded from advancing a new claim or reframing a previously presented one in response to a motion for summary judgment. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") Here, the Court has reviewed the pleadings and finds that Renteria alleged negligence based on the *Scindia* turnover and active control duties as she did not allege negligence on the basis of Grieg Star's failure to intervene. Hence, that claim is not properly before the Court and the Court will not address her claim for breach of the duty to intervene.

### i. Turnover Duty

A vessel's turnover duty "attaches only to latent hazards, defined as hazards that are not known to the stevedore and that would be neither obvious to nor anticipated by a skilled stevedore in the competent performance of its work." *Howlett,* 512 U.S. at 105. As stated earlier. "[t]he exercise of reasonable care does not require the shipowner to supervise the ongoing operations of the loading stevedore (or other stevedores who handle the cargo before its arrival in port) or to inspect the completed stow." *Id.* Therefore, a plaintiff must "demonstrate that the alleged hazard would have been neither obvious to nor anticipated by a skilled and competent stevedore at the discharge port." *Id.* at 106. Conversely, a vessel may not be held liable for "open and obvious" dangers in the cargo stow. *Kirksey,* 535 F.3d at 395. "If the longshoreman knew of the defect, then it is considered open and obvious." *Greenwood v. Societe Francaise DE,* 111 F.3d 1239, 1246 (5th Cir. 1997). There is a "narrow exception" to the open and obvious rule. *Kirksey,* 535 F.3d at 396. It applies where a longshoreman has "no alternative [,]" i.e. where "the dangerous condition

existed in the ship's equipment or was otherwise created by the shipowner through its negligence." *Id.*

In this case, there is no dispute that Renteria had worked in Hold 6 for two days prior to her injury. It is undisputed that she was generally aware the cargo sheeting was unsupported at various points within Hold 6. While it is undisputed that she did not know that the particular portion of the plastic sheeting she fell through was unsupported, Renteria's prior knowledge of the condition of the plastic sheeting generally in Hold 6 renders it open and obvious as a matter of law. Furthermore, there is no evidence that the dangerous condition was a result of an existing condition in the ship's equipment or created by the shipowner. Because she knew of the condition of the plastic cargo sheeting generally, and because there is no factual support for an exception to the general rule, the Court holds that Grieg Star did not violate the turnover duty.

### ii. Active Control Duty

Under the active control duty, "[t]he vessel has a duty to 'exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation.'" *Pimental v. LTD Canadian Pacific Bul*, 965 F.2d at 16 (quoting *Scindia*, 451 U.S. at 167). A vessel owner does not trigger the active control duty by having its employees check on the progress of the contractor's work. See *Fontenot v. United States*, 89 F.3d 205, 208 (5th Cir.1996) (citing *Futo v. Lykes Bros. Steamship Co.*, 742 F.2d 209 (5th Cir.1984)). Therefore, if "a vessel has relinquished control over an area to the stevedore, then it is the primary responsibility of the stevedore to remedy a hazard in that area." *Pimental,* 965 F.2d at 17 (citation omitted).

Here, it is undisputed that Grieg Star turned over Hold 6 for cargo operations to the stevedore on August 11, 2021, and that Renteria was injured on August 17, 2021, the final day of

cargo operations. Renteria's contention that morning safety meetings and the presence of Grieg Star's employees on the vessel, including above the cargo hold, do not relieve Grieg Star of its active control duty as a matter of law, fails. The undisputed facts show that Grieg Star's active control duty was not implicated by its presence on the vessel; hence, Grieg Star is entitled to summary judgment on Renteria's negligence claims.

### b. Negligence per se

Renteria's allegation of negligence per se is based on Title 46 C.F.R. § 42.15–75(d). It is well settled law in the Fifth Circuit that a longshoreman may not "foist the duty of complying with these health and safety regulations upon the shipowner" because that would "employ exactly the type of liability without fault concept from which Congress sought to free vessels by the passage of the 1972 Amendments [to the LHWCA]." *Brown v. Mitsubishi Shintaku Ginko*, 550 F.2d 331, 333 (5th Cir.1977) (internal quotation marks and citation omitted). Furthermore, the regulation cited regulates the protection of the crew. It is undisputed that Renteria was not a member of the crew of the vessel in question. *See* 46 C.F.R. § 42.15–75(d). Hence, Grieg Star is entitled to summary judgment on Renteria's negligence per se claim.

### c. Gross Negligence

Finally, Renteria alleges gross negligence against Grieg Star. However, "[a] plaintiff who cannot support a cause of action for negligence cannot succeed on gross negligence because a finding of ordinary negligence is a prerequisite to a finding of gross negligence." *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 201 n.16 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Therefore, Grieg Star is entitled to summary judgment on Renteria's gross negligence claim.

## V.     CONCLUSION

Based on the foregoing analysis and discussion, Grieg Star's motion for summary judgment is **GRANTED**.

It is so **ORDERED**.

SIGNED on March 12, 2025, at Houston, Texas.

                                            Kenneth M. Hoyt
                                            United States District Judge